The Honorable Martha O. Haynie Orange County Comptroller Post Office Box 38 Orlando, Florida 32802
Dear Ms. Haynie:
You ask substantially the following question:
May tourist development tax revenues be used to construct an "All Wars Memorial" at the Orange County Courthouse, when the memorial is to replace a "Vietnam Veterans Memorial" that was demolished at the Orange County Convention Center?
In sum:
Expenditure of tourist development tax revenues for the construction of a new "All Wars Memorial" at the Orange County Courthouse must be based on a determination by the governing body of the county that the memorial directly and primarily promotes tourism.
You have provided background information that a Vietnam Veterans Memorial was constructed in 1983 at the Orange County Convention Center using funds raised by the community and monies from federal revenue sharing. Due to expansion and subsequent renovations of the center, it was necessary to relocate the memorial. The memorial could not safely be moved, resulting in its demolition and the decision to construct a new memorial at the Orange County Courthouse.
The County Attorney has rendered an opinion stating that it would be appropriate to use tourist development taxes to pay for the new memorial as an operating or capital expense. You question the validity of such an expenditure since the original memorial was not funded by the convention center, but was merely placed at the center as a community memorial.
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act[1] (act), authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
Thus, construction of publicly owned facilities financed by proceeds from the tourist development tax must be primarily related to the advancement and promotion of tourism. It is the governing body of the county that must make the factual determination of whether a particular facility or project is related to tourism and primarily promotes such a purpose. This determination must follow appropriate legislative findings and due consideration of the specific needs and conditions of the particular locality.[4]
Subsection (5) of the act sets forth various purposes for which revenues from the tax may be used. Relevant to the question you have posed, section 125.0104(5)(a)1., Florida Statutes, authorizes the expenditure of tax revenues for the following purpose:
"To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . ."
The plain language of the statute contemplates the expenditure of tax revenues to remodel, repair, improve, maintain and operate a convention center such as the one in Orange County. When a statute enumerates those things upon which it operates, it is ordinarily construed to exclude from its operation all things not expressly mentioned.[5] This office has consistently concluded that tourist development tax revenues may only be used for the purposes enumerated in section 125.0104, Florida Statutes.[6]
The remodeling and expansion of the convention center would appear to have necessarily required removal of the Vietnam Veteran's Memorial. Construction of a new memorial to replace the demolished one at a location off the convention center's premises, however, is not a logical consequence of such remodeling and expansion. Nor does the construction of the memorial at the courthouse appear related to the operation of or capital improvements to the convention center.
While construction of the new war memorial at the Orange County Courthouse appears to be neither a proper capital improvement to the convention center nor related to the operation of the center, it remains for the governing body of the county, not this office, to determine whether such construction is related to tourism and furthers the purpose of promoting tourism in Orange County.[7] Any such determination, however, must show a distinct and direct relationship between expenditure of tourist development tax revenues and the promotion of tourism.
Accordingly, it is my opinion that the expenditure of tourist development tax funds for the construction of a new All Wars Memorial at the Orange County Courthouse depends on a determination by the governing body of the county that such expenditure is directly related to the promotion of tourism in the county.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 125.0104(1), Fla. Stat.
[2] See, s. 125.0104(3)(a), Fla. Stat., stating it is the intent of the Legislature that every person who rents, leases, lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] See, Op. Att'y Gen. Fla. 94-12 (1994) (governing body of the county must make determination that expenditure of tourist development tax revenues for the acquisition of a railway right-of-way and construction of a public recreational trail falls within the scope of expenditures authorized by s. 125.0104, Fla. Stat.).
[5] See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976). Andsee, Op. Att'y Gen. Fla. 88-49 (1988) (expenditure of tourist development tax revenues is limited to those purposes set forth in the statute).
[6] See, Ops. Att'y Gen. Fla. 86-68 (1986) (tourist development tax revenues may be used for beach cleaning and maintenance) and 87-16 (1987) (tourist development tax revenues may be used to improve, maintain, renourish or restore public shoreline or beaches of inland freshwater lake). Cf., Ops. Att'y Gen. Fla. 91-62 (1991) (construction of boat ramps and parking facilities in proximity to inland lakes and rivers not a proper use of tourist development tax revenues), 90-55 (1990) (tourist development tax revenues may not be used to construct beach parks, fund additional law enforcement patrols or lifeguards on the beach, or to build and maintain sanitary facilities on or near the beach), and 88-49 (1988) (no authority to use tourist development tax revenues to acquire real property for beach access).
[7] See, s. 125.0104(5)(a)2., Fla. Stat. (1998 Supp.), allowing the use of tourist development tax revenues "[t]o promote and advertise tourism in the State of Florida . . . ; however, if tax revenues are expended for an activity, venue, or event, the activity, service, venue, or event shall have as one of its main purposes the attraction of tourists as evidenced by the promotion of the activity, service, venue, or event to tourists."